UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jessica Lewis, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PepsiCo, Inc. and Garza Food Ventures, LLC,<br><br>Defendants. | Civil Action No.: 7:26-cv-8794<br><br><u>COMPLAINT</u><br><br><u>CLASS ACTION</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Jessica Lewis ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her counsel, brings this Complaint against PepsiCo, Inc. ("PepsiCo") and Garza Food Ventures, LLC ("Garza") (collectively, "Defendants") who sell snack products under the Siete Foods brand (as defined below, "Siete"), and based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and a class (or classes) of all other similarly situated persons, as defined below.

2. This action concerns Defendants' deceptive and unfair tactic of marketing and selling Siete-branded potato chips and tortilla chips that are purportedly made with avocado oil instead of other oils, but do not contain 100% pure avocado oil. Specifically, Siete's Kettle Cooked Sea Salt Potato Chips Made with Avocado Oil ("Sea Salt Potato Chips") and Maiz Sea Salt Corn Tortilla Chips Made with Avocado Oil ("Sea Salt Tortilla Chips," together with other Siete food

products claiming to contain exclusively avocado oil, the "Products") list on the front label that they are "made with avocado oil" and their ingredient lists name avocado oil as the only oil ingredient. However, a recent study published by researchers at UC Davis (the "UC Davis 2026 Study") found that Siete's Sea Salt Potato Chips and Sea Salt Tortilla Chips contain oils that are not consistent with 100% pure avocado oil.

3. Customers like Plaintiff purchased the Products because of the representations that they contained exclusively avocado oil. Products such as Sea Salt Potato Chips and Sea Salt Tortilla Chips have higher prices because they are supposed to contain exclusively avocado oil. Consumers prefer avocado oil as opposed to seed oils for its neutral flavor profile and potential health benefits. Plaintiff and the other members of the Class (as defined below) would not have purchased Defendants' Products had they known the Products contained other oils besides avocado oil and have been damaged by overpaying for the Products.

4. Defendants' conduct as alleged herein violates the unlawful, unfair, and fraudulent prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; California Consumer Legal Remedies Act, California Civil Code § 1770(a)(5), § 1770(a)(9), and § 1770(a)(16); and Defendants breached their contract for the sale of goods to Plaintiff and class members.

## PARTIES

5. Plaintiff Jessica Lewis is a natural person who is a citizen of the United States and who is domiciled in the State of California.

6. Defendant PepsiCo is a North Carolina corporation headquartered in Purchase, New York. Defendant PepsiCo's mailing address is 700 Anderson Hill Road, Purchase, New York

10577. Defendant is the parent company of Garza, dba Siete Foods ("Siete") and has been since approximately January 17, 2025.

7. Defendant Garza is a Texas limited liability company headquartered in Austin, Texas. Defendant Garza's principal address is 3708 Woodbury Drive, Austin, TX 78704. Defendant Garza is the wholly owned subsidiary of PepsiCo and has been since approximately January 17, 2025.

8. Defendants, through their Siete brand, market and sell products that claim to be made exclusively with avocado oil to consumers throughout the United States. A substantial portion of the conduct giving rise to Plaintiff's claims, including the design, marketing, and/or sale of the Products, took place in, and emanated from, New York.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the class(es) is a citizen of a state different from Defendants.

10. This Court has personal jurisdiction over Defendant PepsiCo because Defendant PepsiCo is headquartered in this District. This Court has personal jurisdiction over Defendant Garza because it conducts and transacts substantial business in New York and because a substantial portion of the acts complained of took place in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, a substantial portion of the acts complained of took place in this district. Defendant PepsiCo is headquartered in this District. Defendants have sold the Products in New York and nationwide.

## FACTUAL ALLEGATIONS

***Defendants' Products***

12. Defendants' Siete-branded food products claim to be made with "Thoughtfully Selected Ingredients." https://sietefoods.com/about/philosophy, archived at https://perma.cc/6TWQ-3FT6. Their website asserts: "We want to create products that solve problems for our consumers. So, we make foods in a variety of delicious flavors, using thoughtfully selected ingredients …. As a result, we hope that more people feel included when Siete is at the table[.]" *Id*. Defendants' products include potato chips, tortilla chips, puff snacks, taco shells, beans, and sauces.

13. In Defendant PepsiCo's prepared management remarks for the third quarter of 2025, issued on October 9, 2025, Defendant PepsiCo emphasized transforming its core portfolio by, among other things, "[e]xpanding the use of avocado oil and olive oil across certain brand platforms," and "[g]rowing the presence of [its] permissible snack brands, such as … Siete." https://investor.pepsico.com/docs/default-source/investors/q3-2025/q3-2025-prepared-management-remarks_vsolm04h2qakietd.pdf. Moreover, during Defendant PepsiCo's earnings call for the fourth quarter of 2025, held on February 3, 2026, PepsiCo CEO Ramon L. Laguarta emphasized consumers' growing taste for better-for-you products made with premium ingredients such as avocado oil, stating:

> So, Lay's [for example], we're … making the brand more centered on simplicity, nature, freshness, potato, the ingredients of the food because that's what consumers are looking for: the food in the brand. … We're also changing some of the oils. So, you will see versions of Lay's with avocado oil. … So, it's an elevation of the ingredients.

https://investors.pepsico.com/docs/pepsico-5v9wci20/media/Files/investors/q4-2025-pep_transcript.pdf, archived at https://perma.cc/735Q-2N82.

14. Defendants further claim that their "tortilla chips, maiz totopos, and potato chips are fried in avocado oil." https://sietefoods.com/faque/collections/ingredients, archived at https://perma.cc/XD6B-KMMS.

15. Refined avocado oil also has a reputation for a neutral flavor profile. Consumers of avocado oil do not want avocado oil that is blended with other oils.

16. Defendants confirm this by stating on their website that "Avocado oil is mild in taste and has a high smoke point which makes it versatile and perfect for frying all of our chips." https://sietefoods.com/community/stories/introducing-our-new-line-of-maiz-totopos-corn-tortilla-chips, archived at https://perma.cc/UBK9-QVW2. Defendants make similar representations on the packaging of certain of their products. *See, e.g.*, https://sietefoods.com/shop/chips-and-snacks/maiz-chips/maiz-sea-salt-totopos-corn-tortilla-chips-7-5oz/?size=7.5oz, archived at https://perma.cc/Y7GB-BXCS; https://sietefoods.com/shop/chips-and-snacks/maiz-chips/maiz-lime-totopos-corn-tortilla-chips-7-5oz/?size=7.5oz, archived at https://perma.cc/8GGB-U38Y; https://sietefoods.com/shop/chips-and-snacks/maiz-chips/maiz-blue-corn-totopos-tortilla-chips-7-5oz/?size=7.5oz, archived at https://perma.cc/2B5V-L2MP.

17. Defendants, through their Siete brand, market and sell kettle cooked potato chip products in different flavors that claim to be "made with avocado oil" ("Potato Chip Products")[1],

[1] The range of products produced by Defendants include the Kettle Cooked Hint of Serrano Sea Salt & Vinegar Potato Chips Made with Avocado Oil, Kettle Cooked Fuego Potato Chips Made with Avocado Oil, Kettle Cooked Chipotle BBQ Potato Chips Made with Avocado Oil, Kettle Cooked Chile Lime Potato Chips Made with Avocado Oil, Kettle Cooked Queso Potato Chips Made with Avocado Oil, Kettle Cooked Spicy Dill Pickle Potato Chips Made with Avocado Oil, Kettle Cooked Habanero Hot Honey Potato Chips Made with Avocado Oil, Kettle Cooked Sour Crema & Onion Potato Chips Made with Avocado Oil, and Kettle Cooked Pequin Buffalo Ranch Potato Chips.

including Sea Salt Potato Chips. https://sietefoods.com/shop/chips-and-snacks/kettle-cooked-potato-chips, archived at https://perma.cc/MU9X-FS8C.

18. The front and back of the 5.5 oz. package[2] of the Sea Salt Potato Chips looks like this:







19. The Sea Salt Potato Chips label clearly informs a consumer that it contains avocado oil. The text "MADE WITH AVOCADO OIL" and a cartoon image of an avocado appear on the front of the packaging, and the text "AVOCADO OIL" appears directly over the Siete logo. The second and only oil ingredient in the ingredient list is avocado oil. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing

[2] Defendants' Sea Salt Potato Chip product also comes in a 1.5 oz. package. *See* https://sietefoods.com/shop/chips-and-snacks/kettle-cooked-potato-chips/sea-salt-potato-chips-6-bags/?size=1.5oz. archived at https://perma.cc/72DV-ETEZ.

facility" that has an allergen present, or that it has "one of the following" trace ingredients. The back of the packaging also says, "SOY FREE."

20. Defendants' website has similar statements that communicate to consumers that the Sea Salt Potato Chips are made with avocado oil and only avocado oil. For example, on the Potato Chips Product listing page, Defendants claim that "All of our Kettle Cooked Potato Chips are made with avocado oil[.]" https://sietefoods.com/shop/chips-and-snacks/kettle-cooked-potato-chips, archived at https://perma.cc/MU9X-FS8C. The webpage for Sea Salt Potato Chips has additional comments about avocado oil and the lack of other oils, stating, "[W]e love potatoes so much that we made a simple potato chip with just the basics—avocado oil and sea salt—to enhance the naturally delectable crunch of potatoes, and to bring you: Kettle Cooked Sea Salt Potato Chips." https://sietefoods.com/shop/chips-and-snacks/kettle-cooked-potato-chips/sea-salt-potato-chips-6-bags/?size=5.5oz, archived at https://perma.cc/JK8Q-DWJ9. The webpage further states, "All of our delicious Kettle Cooked Potato Chips are also non GMO, dairy free, gluten free and soy free." *Id*. There is also a "FAQué" [sic] section on the webpage, including the question "HOW ARE YOUR CHIPS COOKED?," to which Defendants answer "Our tortilla chips, maiz totopos and potato chips are fried in avocado oil." *Id*.

21. In addition to Potato Chip Products, Defendants sell maíz corn tortilla chips[3], grain free tortilla chips[4], grain free puff snacks[5], taco shells[6], beans[7], and sauces[8] that claim to contain pure avocado oil.

22. For example, Defendants sell Sea Salt Tortilla Chips that claim to be made with pure avocado oil. The front and back of the 7.5 oz. package looks like this:

[3] Defendants' range of products includes Maíz Lime Corn Tortilla Chips Made with Avocado Oil, Maíz Blue Corn Tortilla Chips Made with Avocado Oil, Maíz Taco Seasoning Corn Tortilla Chips Made with Avocado Oil, Maíz Mexican Street Corn Tortilla Chips Made with Avocado Oil, and Maíz Three Cheese Nacho Corn Tortilla Chips Made with Avocado Oil.

[4] Defendants' range of products includes Grain Free Sea Salt Tortilla Chips, Grain Free Lime Tortilla Chips, Grain Free Nacho Tortilla Chips, Grain Free Dip Chip Tortilla Chips, Grain Free Jalapeño Lime Tortilla Chips, and Grain Free Churro Chips.

[5] Defendants' range of products includes Grain Free Fuego Puff Snacks, Grain Free Queso Puff Snacks, and Grain Free Chile Lime Puff Snacks.

[6] Defendants' range of products includes Maíz Corn Taco Shells Made with Avocado Oil and Grain Free Taco Shells Made with Avocado Oil.

[7] Defendants' range of products includes Vegan Refried Pinto Beans Made with Avocado Oil, Vegan Refried Black Beans Made with Avocado Oil, Vegan Refried Ranchero Beans Made with Avocado Oil, and Vegan Refried Charro Beans Made with Avocado Oil.

[8] Defendants' range of products includes Habanero Botana Sauce Made with Avocado Oil, Jalapeño Botana Sauce Made with Avocado Oil, Green Enchilada Sauce Made with Avocado Oil, and Red Enchilada Sauce Made with Avocado Oil.







23. The Sea Salt Tortilla Chips packaging has similar representations that it contains avocado oil. The front of the packaging says that it is "MADE WITH AVOCADO OIL." The words "AVOCADO OIL" are in a larger font than the description of the food—"CORN TORTILLA CHIPS." The back of the packaging further contains the text, "WHY AVOCADO OIL? Like corn, avocado is an ingredient that plays a big role in our culture. Avocado oil is mild in taste and has a high smoke point, which makes it versatile and perfect for frying these chips," and has a cartoon image of an avocado. https://sietefoods.com/shop/chips-and-snacks/maiz-chips/maiz-sea-salt-totopos-corn-tortilla-chips-7-5oz/?size=7.5oz, archived at https://perma.cc/Y7GB-BXCS. The second and only oil ingredient in the ingredient list for the Sea Salt Tortilla Chips is avocado oil. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

24. Defendants' website also makes it clear that Sea Salt Tortilla Chips are supposed to contain avocado oil and not other oils. It says, "Our Maíz Corn Tortilla Chips are made with avocado oil and organic corn to invite more people to the table!" https://sietefoods.com/shop/chips-and-snacks/maiz-chips, archived at https://perma.cc/NK8J-HAYW. The Sea Salt Tortilla Chips webpage promotes avocado as a "salt of the earth" ingredient and states, "[W]e put all three of these ingredients together—organic white and yellow corn, avocado oil, and sea salt—and for these delicious and crunchy corn tortilla chips." https://sietefoods.com/shop/chips-and-snacks/maiz-chips/maiz-sea-salt-totopos-corn-tortilla-chips-7-5oz/?size=7.5oz, archived at https://perma.cc/Y7GB-BXCS. There are also "FAQué[s]," including the question "HOW ARE YOUR CHIPS COOKED?," to which Defendants answer "Our tortilla chips, maiz totopos and potato chips are fried in avocado oil." *Id.*

25. Defendants also made similar representations about Sea Salt Tortilla Chips on their Instagram (@sietefoods) with over 500,000 followers: "Our new Maíz Totopos Corn Tortilla Chips are made using ingredients we feel good about eating and sharing with you, our extended familia! We heard your requests for Siete corn totopos and made ours with organic nixtamalized corn and avocado oil." https://www.instagram.com/p/Co_E0qpufFy, archived at https://perma.cc/HDD3-JK3H.

***Testing Results***

26. In 2026[9], researchers at UC Davis tested food products that were labeled as containing avocado oil and olive oil (the above-defined UC Davis 2026 Study). The researchers concluded that 89% of the products they tested were not consistent with avocado oil and likely had

[9] The article was first available online on July 11, 2026.

other oils mixed in instead. *See* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil, archived at https://perma.cc/5HXH-XD5V; Lopez-Alvarez, et al., "Authenticity of avocado and olive oils used as ingredients in commercially processed foods," 6 Applied Food Research 102389 (2026), available at https://www.sciencedirect.com/science/article/pii/S2772502226007274.

27. Specifically, the study concluded that all of the samples of Defendants' Products—the Sea Salt Potato Chips and Sea Salt Tortilla Chips from Siete—were not "compositionally consistent with authentic oil."[10]

28. The UC Davis 2026 Study measured authenticity based on the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) (the "Codex"). It measured both fatty acids and sterol markers. A sample was only considered inconsistent with the requirements in the Codex if more than two measurements exceeded the acceptable amounts of fatty acids and sterol markers by more than 10%. UC Davis 2026 Study at 2.4, p. 3.

29. The UC Davis 2026 Study highlighted three fatty acids that are included in the Codex and exhibited the greatest difference between products classified as consistent and inconsistent with authentic avocado oil: palmitic acid (C16:0), palmitoleic acid (C16:1), and stearic acid (C18:0). Both of the Products from Defendants sampled in the study (at two samples each, for a total of four samples) were outside of the Codex ranges for these fatty acids. *See* UC Davis 2026 Study, Supplemental materials, Table S3: "Fatty acid profiles of all samples." For

[10] The UC Davis website provided a "Media Kit" of materials to accompany the story. This Media Kit included a document titled "Studied products AFRES.pdf," which stated "Brand information in **Authenticity of avocado and olive oils used as ingredients in commercially processed foods**" (bold in original). Two samples of each of the Products were tested and given a sample identification number between 13 through 16. *See* https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

example, 4.0% to 17.1% of the fatty acids in avocado oil are supposed to be palmitoleic acid (C16.1), but none of the four samples from Siete exceeded 1.5%.

30. The UC Davis 2026 Study also highlighted three sterol markers that are included in the Codex: campesterol, stigmasterol, and Δ7-avenasterol. Elevated levels of these three sterol markers are consistent with avocado oil that has been substituted or diluted with other vegetable oils. Both of the Products from Defendants sampled in the study (consisting of four samples) were outside of the Codex ranges for these sterol markers. *See* UC Davis 2026 Study, Supplemental materials, Table S4: "Sterol profiles of all samples." For example, only 0.3% to 2.0% of the sterols in avocado oil are supposed to be stigmasterol, but the lowest sample from the Siete Products was 5.2% and the rest were between 5.3% and 6.9%.

31. The UC Davis 2026 Study also noted that cis-vaccenic acid (C18:1 (n-7)) is often higher in samples that are otherwise consistent with the Codex requirements. Prior research by one of the authors of the UC Davis 2026 Study concluded that measuring C18:1 (n-7) can be useful to determine whether a product labeled as avocado oil has been adulterated with seed oils such as safflower or sunflower oil. *See* Green, Wang, "Cis-vaccenic acid: New maker [sic] to detect seed oil adulteration in avocado oil," 1 Food Chemistry Advances 100107 (2022), available at https://www.sciencedirect.com/science/article/pii/S2772753X22000958?via%3Dihub. For example, less than 0.75% of the fatty acids in safflower oil and less than 1.3% of the fatty acids in sunflower oil are C18:1 (n-7), while 5.5% to 7.5% of the fatty acids in avocado oil are C18:1 (n-7).

32. The UC Davis 2026 Study found that both of the Siete Products sampled had C18:1 (n-7) values between 1.2% and 1.9%. This is not consistent with avocado oil.

33. Defendants charge a price premium for the Products because they are labeled as containing exclusively avocado oil.

34. The UC Davis 2026 Study concluded that "Retail prices showed consistent premiums for products labeled as containing avocado oil or olive oil relative to vegetable oil counterparts." UC Davis 2026 Study, page 4.

35. Indeed, Defendants' Sea Salt Potato Chips, for example, was priced and sold at a significantly higher price than Cape Cod's sea salt potato chips, a vegetable oil counterpart. At one retailer, Defendants' Sea Salt Potato Chips (5.5 oz.) currently sells for $4.39 ($0.80 per ounce), while Cape Code's sea salt potato chips (8 oz.) sells for $3.99 ($0.50 per ounce). *See* https://www.target.com/p/siete-sea-salt-kettle-chips-5-5oz/-/A-85321674, archived at https://perma.cc/D79M-75JG; https://www.target.com/p/cape-cod-potato-chips-original-kettle-cooked-chips-8oz/-/A-13208635, archived at https://perma.cc/Z63H-A2WM. Defendants' Sea Salt Potato Chips cost significantly more than Cape Code's similar non-avocado oil product.

36. The label and ingredient lists for the Products must identify the ingredients by their common or usual names. *See* 21 C.F.R. § 101.4(a)(1).

37. The labels and ingredient lists for the Products claim that they exclusively include avocado oil.

38. The Products contain oils that are not consistent with the usual and customary name of avocado oil.

39. The Products do not exclusively contain avocado oil.

40. The Products do not contain pure avocado oil.

41. The Products do not list all of their ingredients in violation of federal requirements. See 21 C.F.R. § 101.4(a)(1).

***Plaintiff's Experience***

42. Plaintiff Lewis is a consumer who favors products containing avocado oil to the exclusion of other oils due to its taste profile and potential health benefits, among other reasons.

43. Plaintiff Lewis purchased Defendants' Products, including Defendants' Sea Salt Tortilla Chips because of the representation that they contained exclusively avocado oil.

44. Plaintiff Lewis paid a higher price for Defendants' Products relative to other similar products because they were supposed to contain exclusively avocado oil.

45. After Plaintiff Lewis learned following the publication of the UC Davis 2026 Study that Defendants' Products do not contain pure avocado oil, Plaintiff Lewis cannot trust that Defendants' Products or any of the Products would exclusively contain avocado oil. If Plaintiff Lewis could be sure that the Products did actually exclusively contain avocado oil, Plaintiff Lewis would purchase them again.

## CLASS ACTION ALLEGATIONS

46. This action is brought by Plaintiff, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

47. Plaintiff seeks to represent the following nationwide class: all persons in the United States who purchased Defendants' Siete Products within the statute of limitations (the "Class").

48. Plaintiff also seeks to represent the following subclass: all persons in the State of California who purchased Defendants' Siete Products (the "California Subclass").

49. Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclasses.

50. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition(s).

51. Excluded from this Class are Defendants and their officers, directors, and employees, as well as Defendants' affiliates, parents, and subsidiaries and their respective officers, directors, and employees.

52. The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery. Based on Defendants' sales volume, there are at least several thousand Class members, and likely significantly more.

53. Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to one or more of the Class or Subclass are:

i. Whether Defendants represented that the Products contained avocado oil;

ii. Whether the Products contained 100% avocado oil;

iii. Whether Defendants represented that the Products did not contain oils other than avocado oil, such as seed and other oils;

iv. Whether the Products contained oils other than avocado oil, such as seed oils;

v. Whether Defendants failed to disclose that the Products contained oils other than avocado oil, such as seed and other oils;

vi. Whether Defendants' conduct violates the California Unfair Competition Law;

vii. Whether Defendants' conduct violates the California Consumer Legal Remedies Act;

viii. Whether Defendants' wrongful conduct caused Plaintiff and the Class members damages;

ix. The measure and amount of damages suffered by Plaintiff, and members of the Class;

x. Whether Defendants' conduct caused them to be unjustly enriched;

xi. The amount of restitution to which Plaintiff and members of the Class are entitled;

xii. Whether Plaintiff and members of the Class are entitled to punitive damages;

xiii. Whether Plaintiff and members of the Class are entitled to equitable relief, injunctive relief, and/or specific performance;

xiv. Whether Plaintiff and members of the Class are entitled to a reasonable award of attorney fees, interest, and costs of suit.

54. Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because she was a purchaser of the Products.

55. Plaintiff will fairly and adequately protect the interests of members of the Class and Subclasses and has retained counsel competent and experienced in class actions and consumer litigation. Plaintiff has no interests antagonistic to or in conflict with those of any Class members.

56. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. Class members can be notified by publication, and/or by mail or email.

57. Defendants have acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.

58. Class certification is also appropriate because there is a readily identifiable class and subclasses on whose behalf this action can be prosecuted. Class members are readily ascertainable. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

## COUNT I

**Violations of California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
***On Behalf of the California Subclass***

59. Plaintiff Lewis hereby incorporates by reference all allegations made in paragraphs 1 through 58.

60. Plaintiff Lewis brings this claim individually and on behalf of the members of the California Subclass against Defendants.

61. Plaintiff Lewis asserts this cause of action against Defendants for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

62. Defendants' conduct violates the UCL, as the acts and practices of Defendants constitute a common and continuing course of conduct by means of "unlawful," "unfair," and "fraudulent" business acts or practices within the meaning of the UCL.

63. Defendants' conduct is fraudulent, and thus amounts to unfair competition as set forth in the UCL, in that Defendants offered Products for sale that claimed to have pure avocado oil as an ingredient, did not disclose other oils as an ingredient, and actually had either a mixture of avocado oil and other oils or solely other oils. Such misrepresentations and omissions are likely to deceive, and in fact have deceived, thousands of consumers.

64. Defendants' conduct is unlawful, and thus amounts to unfair competition as set forth in the UCL, in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, and California Business & Professions Code § 17500. The Products' labels also violate the federal requirements for labeling ingredients by their common or usual names. *See* 21 C.F.R. § 101.4. 76. Defendants' conduct is unfair, and thus amounts to unfair competition as set forth in the UCL, because its utility to Defendants, if any, is greatly outweighed by the harm it causes to Plaintiff Lewis and members of the California Subclass; because it violates established public policy as alleged herein; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff Lewis and California Subclass members who purchased the Products—which are meant to be eaten—without knowing what was inside.

65. As described above, Defendants willfully deceived Plaintiff Lewis and California Subclass members by misrepresenting the goods they provided and with the intent to induce them to alter their positions to their injury. Defendants' representations were untrue and misleading, and Defendants knew, or by exercising reasonable care should have known, such representations were untrue and misleading. Defendants knowingly received and retained wrongful benefits and funds from Plaintiff Lewis and members of the California Subclass. Therefore, the Defendants acted with conscious disregard for the rights of Plaintiff Lewis and members of the California Subclass.

66. As a direct and proximate cause of Defendants' violations of the UCL, Plaintiff Lewis and members of the California Subclass suffered an injury in fact and have suffered monetary harm. Defendants, on the other hand, have been unjustly enriched. The Court should impose a constructive trust and should require Defendants to make restitution to Plaintiff Lewis and the California Subclass and/or disgorge their ill-gotten profits pursuant to Business & Professions Code § 17203.

67. Plaintiff Lewis and the California Subclass seek equitable relief because they have no other adequate remedy at law. Legal remedies available to Plaintiff Lewis and the California Subclass are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff Lewis and California Subclass members failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff Lewis may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff Lewis seeks equitable remedies in the alternative to legal remedies, which are as of yet uncertain.

68. Defendants' unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiff Lewis and the California Subclass in that the Defendants continue to sell the Products with inaccurate labels. Legal remedies available to Plaintiff Lewis and California Subclass members are inadequate because they do not address likely future harms. Plaintiff Lewis further seeks an order enjoining Defendants from engaging in any unlawful or inequitable acts and practices as alleged herein.

69. Plaintiff Lewis and the California Subclass seek equitable relief because they have no other adequate remedy at law.

**COUNT II**

**Violations of California Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750, et seq.**
***On Behalf of the California Subclass***

70. Plaintiff Lewis hereby incorporates by reference all allegations made in paragraphs 1 through 58.

71. Plaintiff Lewis brings this claim individually and on behalf of the members of the Class against Defendants.

72. The conduct of Defendants alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA").

73. Defendants are persons as defined by Cal. Civ. Code § 1761(c).

74. Plaintiff Lewis and California Subclass members are consumers as defined by Cal. Civ. Code § 1761(d).

75. Defendants' Products, described above, constitute goods as defined by Cal. Civ. Code § 1761(a).

76. Plaintiff Lewis's purchases were transactions under Cal. Civ. Code § 1761(e).

77. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer," which, among other instances enumerated in the CLRA, include: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …." (§ 1770(a)(5)); or "Advertising goods or services with intent not to sell them as advertised" (§ 1770(a)(9)); or "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (§ 1770(a)(16)).

78. Defendants violated Cal. Civ. Code § 1770(a)(5) by misrepresenting the characteristics and ingredients of the Products.

79. Defendants violated Cal. Civ. Code § 1770(a)(9) by falsely advertising the Products as having avocado oil, of not having other oils, and failing to disclose the presence of other oils.

80. Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that they would provide Products that contained avocado oil and not seed oils and they did not.

81. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendants' goods and services. Plaintiff Lewis and California Subclass members justifiably acted or relied upon Defendants' misrepresentations and omissions to their detriment.

82. Plaintiff Lewis and the other members of the California Subclass have been, and continue to be, injured as a direct and proximate result of Defendants' violations of the CLRA.

83. Plaintiff Lewis is entitled to pursue a claim against Defendants on behalf of the Class to enjoin Defendants from continuing their unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

84. Pursuant to Cal. Civ. Code § 1782, Plaintiff Lewis is serving on Defendants a CLRA notice letter. If Defendants fail to rectify these issues within the time period specified therein, Plaintiff Lewis will amend this Complaint, as permitted thereby, to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

**COUNT III**

**Breach of Contract**
***On Behalf of the Class***

85. Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 through 58.

86. Plaintiff brings this claim individually and on behalf of the members of the Class.

87. As alleged above, Defendants promised to sell their Products with pure avocado oil and not other oils.

88. Plaintiff and the Class members purchased the Products pursuant to that promise.

89. Defendants breached their contract with Plaintiff and Class members by failing to provide Products with pure avocado oil and instead providing products that contained other oil.

90. Plaintiff and the other members of the Class were injured and suffered damages as a direct and proximate result of Defendants' breach of contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class and Subclasses, request that the Court award the following relief:

i. Certify this action as a class action, appoint Plaintiff as the Class representative, and designate the undersigned as Class counsel;

ii. Declare Defendants' conduct unlawful;

iii. Enjoin Defendants from the unlawful conduct alleged herein;

iv. Award Plaintiff and the Classes damages under common law and/or by statute, including treble and/or punitive damages;

v. Award Plaintiff and the Classes restitution and/or disgorgement;

vi. Award Plaintiff attorneys' fees, costs, and pre-judgment and post-judgment interest; and

vii. Grant such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues so triable in the present action.

Dated: October 5, 2026

WOLF POPPER LLP

*<u>/s/ Matthew Insley-Pruitt</u>*

Chet B. Waldman
cwaldman@wolfpopper.com
Matthew Insley-Pruitt
minsley-pruitt@wolfpopper.com
Justyn Millamena
jmillamena@wolfpopper.com
570 Lexington Avenue, 19th Floor
New York, NY 10022
Telephone: (212) 759-4600

*Counsel for Plaintiff*